## Spigelmoyer *against* Walter.

One whose ark is obstructed by a dam in Penn's Creek cannot use the common law remedy of abatement; but must resort to that provided by the statute.

In an action of trespass for destroying a mill-dam *et alia enormia*, it is competent for the plaintiff to give evidence of the amount of loss which he sustained by reason of the stoppage of his mills.

ERROR to the Common Pleas of *Union* county.

This was an action of trespass *vi et armis*, by Simon Walter against Daniel Spigelmoyer, Jacob Fees and Elias Fees, in which the plaintiff thus laid his cause of action:

" And whereupon the said Simon, by Isaac Slenker, his attorney, complains that the said Daniel, Elias and Jacob, on the 1st day of April 1838, with force and arms, &c., the close of the said Simon, in the county aforesaid, did break and enter the mill-dam of the said Simon, then and there did cut, break and tear down, contrary to law, so that the said Simon was put to great expense, to wit, $200 in rebuilding and repairing the same, and other harms to him did, to the great damage of the said Simon, and against the peace and dignity of the commonwealth of Pennsylvania. Whereupon the said Simon saith he is worse, and hath damage $500; and thereof he brings suit."

Before the jury were sworn, the plaintiff suffered a nonsuit as to Elias Fees.

The defendants justified by a special plea, and gave evidence in mitigation of damages, that they were coming down Penn's creek with an ark, and were stopped by the plaintiff's mill-dam, which was so out of repair as to be impassable without cutting it down, which they did, just so far as to let them through with their ark.

The plaintiff offered evidence to show that his mills were stopped for a long time, by reason of the want of water, occasioned by the cutting down of the dam. The defendants objected to this, on the ground that it was not laid in the declaration as an averment of damages; but the court received the evidence.

The defendant asked the court to instruct the jury:

1. That if the jury are satisfied from the evidence that plaintiff's dam was not erected and kept in repair according to the provisions of the Act of 23d March 1803, then it is a public nuisance, and defendants had a right to abate it.

2. That if the jury are satisfied from the evidence that plaintiff's dam was so out of repair as to impede the navigation at, and

[Spigelmoyer v. Walter.]

long before defendants committed the alleged trespass, that the water was sufficiently low to enable plaintiff to repair his dam, and that he neglected to do so, and that defendants removed only so much of the obstruction as was necessary to permit their ark to pass safely, by doing as little damage to said dam as possible, then the plaintiff is not entitled to recover.

The court (Lewis, President) refused to give these instructions, and, in substance, stated to the jury, that the defendants had no right to abate or cut away the plaintiff's dam as a nuisance, but in case it impeded or obstructed the navigation, he was confined to the remedy prescribed by the Act of 23d of March 1803. The plaintiff is therefore entitled to recover, if the jury are satisfied that his dam was cut away, or part of it, by the defendants, or by their direction. The damages are for the jury. They will of course, taking into consideration the whole circumstances of the case, the peculiar hardships of the defendants' case, the length of time during which plaintiff permitted his dam to remain out of repair, (from March to the 8th or 9th of June), and the obstruction continuing to increase until the defendants' ark stuck fast in the breach, and that defendants only did the injury to enable the ark to pass.

*Miller*, for plaintiff in error. The evidence given by the plaintiff on the subject of the loss of the use of his mills, was to establish consequential damage, and was the subject of an action on the case. But if such damages were recoverable in trespass, they should have been laid in the declaration. 1 *Mass.* 47; 3 *Stark.* 1454. The defendants were justifiable, see *Act of 23d April* 1803, which authorizes the erection of dams in Penn's creek. 9 *Watts* 119; 4 *Watts* 438; 10 *Watts* 86; 14 *Wend.* 13; 15 *Wend.* 397; 11 *Wend.* 539.

*Slenker*, for defendant in error. The evidence offered was not to establish an independent consequential wrong, but a direct, immediate and natural consequence of the act done and laid in the declaration, and covered by the expression "*alia enormia.*" 2 *M'Cord* 277. It is expressly settled by the case in 3 *Watts* 330, that the party cannot take the remedy into his own hands, but must resort to that pointed out by the provisions of the Act of Assembly made for the purpose. 1 *Binn.* 463.

The opinion of the Court was delivered by ·
Sergeant, J.—The case of *Criswell* v. *Clugh,* (3 *Watts* 330), decides the point made in the defendants' justification. It was there held, that the party must pursue the remedies pointed out by the Act of Assembly, and could not use the common law remedy of abatement. It is argued that this case is distinguishable, because the defence here is not put on the claim of a right to abate

the dam entirely, but only to remove so much of the obstruction as to permit arks to pass, doing as little damage as possible. It is almost impossible for a person to cut away the logs of a dam, so as to obtain a passage through for an ark, without subjecting it to the danger of being soon swept away by the floods; and it is probable it was for this, among other reasons, the remedy was not left by the Legislature to the party injured, but to the view and adjudication of others. Besides, the common law right of abatement does not go to the entire destruction of the thing, but only to the removal of so much as is illegal. *Dyer* v. *Dupui*, (5 *Whart.* 597). So that in effect the case in 3 *Watts* decides this point, and no distinction exists between that case and the present. The party must pursue the course prescribed by the Act of Assembly.

2. We think the evidence objected to was admissible under the general averment of " other harms" in the declaration. In an action of trespass for destroying a *mill-dam*, (not merely a dam which may be for other purposes), the stoppage of the mills supplied by its means with water-power, seems to fall within the description of such a damage as naturally or necessarily results from the act. The cases cited by the plaintiff show that these words have received a large construction, so as to embrace consequential injuries not specifically mentioned in the declaration, but ordinarily flowing from the act complained of. Under the usual averment of damages, called *alia enormia*, damages naturally arising from the act complained of, may be given in evidence, in aggravation, though not stated specially. 2 *Saund. Pl. & Ev.* 865; *B. N. P.* 89.

Judgment affirmed.