KRESTICH, Respondent, vs. STEFANEZ, Appellant.*

*March 11—April 13, 1943.*

* Motion for rehearing denied, with $25 costs, on June 15, 1943.

For the appellant there were briefs by *Lines, Spooner &*
*Quarles,* attorneys, and *Charles B. Quarles* and *James T. Guy*
of counsel, all of Milwaukee, and oral argument by *Mr. Guy.*
On the motion for rehearing, *Burns & Mehigan* of Milwau-
kee were also of counsel on the brief.

For the respondent there was a brief by *Corrigan & Backus*
and *L. A. Schweichler,* attorneys, and *Walter D. Corrigan,*
*Sr.,* and *Thomas M. Corrigan* of counsel, all of Milwaukee,
and oral argument by *Mr. Walter D. Corrigan, Sr.,* and
*Mr. Schweichler.*

WICKHEM, J.   The complaint alleges that plaintiff is a
housewife and defendant a duly licensed physician and
surgeon; that in September, 1928, plaintiff and her husband,
having confidence in defendant, employed him to treat plain-
tiff for a malady; that defendant accepted the employment;
that on September 22, 1928, defendant, in association with
another surgeon selected by him, performed an operation to
remove plaintiff's gall bladder; that the stitching and sewing

of the incision was done by defendant; that in the course of this operation defendant left a surgical needle and part of another needle in plaintiff's abdomen; that in the presence of plaintiff's husband the surgical nurse informed defendant that these needles could not be accounted for; that plaintiff's husband was compelled to leave the operating room before any search was made for the missing articles; that thereafter defendant represented to plaintiff's husband that he had found the missing articles; that these statements were in all respects false to the knowledge of defendant, and that they were made for the purpose of deceiving plaintiff and her husband into the belief that the articles had been found and removed; that plaintiff and her husband relied upon these representations and believed that her subsequent illness was not caused by the presence of these needles in her body; that plaintiff's health continued to be bad, and in the year 1931 plaintiff became very ill because, as she is now informed, of the presence of these needles in her abdomen; that on this occasion she called defendant to attend her as a physician and informed him that she intended to call another physician to make an examination and diagnosis because she feared that something might have been left in her abdomen in the former operation. Whereupon defendant again stated to her that he had found the articles which were temporarily missing at the former operation and had removed them; that there was nothing left in her abdomen and no necessity for her to have another physician make an examination; that the representations were false, known by defendant to be so, and made with the intention that she would believe them and refrain from applying for advice to another physician; that as a result she refrained from resorting to another physician until 1941, in the meantime suffering from recurring pains and illness; that plaintiff continued under defendant's professional care until about November, 1937, and that until October 15, 1941, when another surgeon removed the needles from plaintiff's ab-

domen, defendant continued to conceal the facts from the plaintiff; that plaintiff did not discover the falsity of defendant's representations until October 15, 1941.

Upon these allegations, defendant contends that the action is one of tort for malpractice and barred, (1) because of plaintiff's failure to give notice of injury within two years, and (2) by the six-year statute of limitations applicable to actions to recover damages for injury to person or property. Sec. 330.19 (5), Stats. *Siebert v. Jacob Dudenhoefer Co.* 178 Wis. 191, 188 N. W. 610; *Lotten v. O'Brien,* 146 Wis. 258, 131 N. W. 361; *Klingbeil v. Saucerman,* 165 Wis. 60, 160 N. W. 1051; *Hoffmann v. Milwaukee Electric R. & L. Co.* 127 Wis. 76, 106 N. W. 808.

It is further contended by defendant that if the complaint is grounded upon the original tort, fraudulently concealed, the latter circumstance does not prevent the statute of limitations from running. *Blake v. Miller,* 178 Wis. 228, 189 N. W. 472; *Wisconsin Trust Co. v. Cousins,* 172 Wis. 486, 179 N. W. 801; *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Seideman v. Sheboygan L. & T. Co.* 198 Wis. 97, 223 N. W. 430; *Guile v. La Crosse Gas & Electric Co.* 145 Wis. 157, 130 N. W. 234; *Ott v. Hood,* 152 Wis. 97, 139 N. W. 762; *Marshall & Ilsley Bank v. Baker,* 236 Wis. 467, 295 N. W. 725. Defendant's contentions are applicable whether the action be considered to be based upon the original malpractice plus fraudulent concealment, or upon representations in 1931 as constituting a new malpractice.

Plaintiff asserts that the cause of action is not one for malpractice but one for fraud, in that defendant occupying a position of trust, and confidence, and knowing that the needles were left in the abdomen, being informed that plaintiff proposed to seek other medical advice and for the purpose of inducing plaintiff to refrain from this course of action, falsely represented to plaintiff in 1931 that the needles had been removed and could not be the cause of her continued ill-health;

that under the amendment of 1929 to sec. 330.19 (7), Stats., she has six years from her discovery of the fraud in 1931 within which to commence her action. Ch. 24, Laws of 1929, struck from sec. 330.19 (7) the words "in a case which was, on and before the twenty-eighth day of February, A. D. one thousand eight hundred and fifty-seven, cognizable solely by the court of chancery," thus making the limitations upon actions for deceit run from the date when the fraud was discovered. See *Thom v. Sensenbrenner,* 211 Wis. 208, 247 N. W. 870.

These contentions present questions of considerable difficulty. On each occasion that defendant, in the course of his professional treatment of plaintiff subsequent to her operation, continued to disregard the presence of the needles as a factor in her condition in the face of his own knowledge that they were there, he was doubtless guilty of a malpractice, however fraudulent his conduct actually was. However, when plaintiff informed defendant that she proposed to seek other medical advice and when, for the purpose of forestalling this course of action and not in connection with any medical treatment, defendant repeated the misrepresentations with the actual result of causing her to abandon her announced purpose, he stepped out of his professional character and committed a new and substantive breach of plaintiff's rights constituting fraud and redressable by an action of deceit.

Giving to the complaint that liberal construction to which it is entitled under the code, we consider that it sufficiently alleges that defendant's fraud was wholly apart from the necessity of treatment and sufficiently outside of, and beyond the relationship of doctor and patient to constitute an independent fraud and not malpractice. The representations were new and made under allegedly different circumstances than the earlier representations, and a new form of detriment to plaintiff appears, namely, the abandonment of her announced intention to seek other medical advice. The allegations of

the complaint bring the case within the decision of this court in *Seideman v. Sheboygan L. & T. Co., supra.* In that case plaintiff, by reason of fraudulent misrepresentations, had bought certain bonds. Under her contract she had the right to return them if she felt insecure. In June, 1923, plaintiff, being of the view that the bonds were not as represented, demanded of defendant that she have her money back. Thereupon defendant made further misrepresentations which were effective to persuade her to keep the bonds. The case came up upon the question whether the statute of limitations had barred plaintiff's action. That turned upon the question whether there was involved in the case merely a continued course of concealment of the original fraud, in which case the six-year statute would apply as the cause of action was not solely cognizable in equity, and the 1929 amendment, of course, had not been enacted. The court, however, held that there was more in the situation than mere concealment of fraud. The court said (p. 102) :

"It is, in effect, asserted that within the six years prior to the commencement of this action, upon a then present desire of the plaintiff to surrender, because she deemed them valueless, the securities which she had purchased long prior thereto from the defendant Trust Company and to assert a right which she then had under a then valid and subsisting contract for a repurchase of the bonds by the defendant company, she was induced, by misrepresentations then made as to an existing situation, to refrain from insisting upon her contract rights to recover back her money."

The court in the *Seideman Case, supra,* considered that case to be within the exception thus described by this court in *Blake v. Miller,* 178 Wis. 228, 237, 189 N. W. 472 :

"If the plaintiff had contemplated action of any sort and the defendant Miller had intervened and by means of false representations had induced the plaintiff to refrain from acting, a different situation would be presented. No allegation of that character appears in the complaint."

These cases are to be compared with the case of *Larson v. Ela,* 212 Wis. 525, 250 N. W. 379, in which this court found that there were no allegations that plaintiff relied upon the new representations or was thereby influenced to act or refrain from acting. It seems to us that this case is analogous to the *Seideman Case, supra.* While plaintiff had been lulled into security by defendant's original misrepresentations, the effect of these misrepresentations was completely spent in 1931, according to the allegations in the complaint. Plaintiff had by that time become sufficiently skeptical as to entertain and announce an intention of seeking new medical research into her condition to determine whether the needles were actually present in her body. To prevent this course of action, and not for the purpose of treating her, defendant made new representations and persuaded plaintiff to put aside her doubts. We conclude that this was a new fraud and not a mere continued concealment, and that under the circumstances alleged it was not a mere malpractice but a putting aside of the relationship of physician and patient.

It is contended that in any event this demurrer should have been overruled because the answer did contain the allegation that the cause of action is barred by the statute of limitations and that defendant should, in any event, be permitted to contest the question whether plaintiff should not reasonably have discovered the fraud much earlier than she did. The allegation in the answer is not adequate. It is a mere conclusion of law without any supporting premise of ultimate fact applicable to the cause of action for fraud.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.